May it please the Court, Daniel Diskin for the Petitioner, Ansar Hussan Hussain. The Board of Immigration Appeals grossly abused its discretion when it denied the timely motion to reopen that the petitioner filed with the agency below following his marriage to his U.S. citizen wife. Additionally, the agency also erred in its earlier decision dismissing his appeal from the decision by the immigration judge. Starting with the Board's denial of his timely motion to reopen, the agency incorrectly determined that he failed to present clear and convincing evidence that he had entered into a bona fide marriage with his U.S. citizen wife. In reaching this conclusion, the agency either gave short shrift or entirely ignored critical evidence that was produced by the petitioner in support of his motion to reopen. What did you just say the standard was? I didn't think that was the standard that to reopen, you have to provide clear and convincing evidence indicating a strong likelihood. Correct, Your Honor, clear and convincing evidence indicating a strong likelihood. That it was bona fide, not that the wedding, not that the marriage was indeed bona fide, but just a strong likelihood to open up the rehearing. Correct, Your Honor, that is correct, precise formulation. And the BIA did not use the strong likelihood standard, did it? I don't think, correct, Your Honor, I don't think it followed the correct standard in this case. Its own standard. It didn't follow its own standard, Your Honor, correct. The evidence truly, use of discretion. Well, this court reviews the agency to see if it abused its discretion, but one of the things that this court will look to is whether the agency followed its own case law. Another thing that the court should look to is whether, even if the agency followed the correct standard, which I don't think it did in this case, whether it adequately grappled with the evidence. So if the agency either doesn't follow the correct legal standard or doesn't follow its own case law, or alternatively if it doesn't meaningfully address the evidence that was presented with the motion, either one would constitute an abuse of discretion. I do acknowledge that, you know, an abuse of discretion standard, which this court applies in reviewing, the denial of a motion to reopen is deferential. And it's the abuse of discretion by the board. Correct. The BIA itself. Correct, by the board. But as I said, there's two ways, at least two ways, in which the agency abuses its discretion. One. But you wanted to reopen a decision earlier that resulted in its removal. Correct, Your Honor. And but for changed circumstances? No, I mean, this is a, it's, we're seeking a reopening based on a marriage to a U.S. citizen. That's what I mean, but the marriage had occurred after. It did and that and there were other facets to it. And that was the basis for the motion to reopen. Correct. But the board's case law makes clear that if certain factors are met, including clear and convincing evidence indicating a strong likelihood that the marriage is bona fide, namely the matter of. Clear and convincing is a pretty strong standard. Well, I mean, it's, it's strong, but it, it's not the, you It's more than a preponderance, but. Not a reasonable doubt. I agree with you. We can agree on that. But I mean, the pertinent regulation discusses the type of evidence that can be presented to show that the marriage is bona fide. And that includes, among other things, a joint lease agreement and affidavits by third parties, both of which were presented here, along with other evidence that the petitioner entered into the marriage in good faith. And this is the key point that. But after you lost the motion to reopen, you moved again, then you moved to reconsider for something. Yes, correct. There was another motion. Yes, we filed a motion to reconsider and we also filed a second motion to reopen after his wife had become pregnant, asking if they sua sponte reopened the case at that point. With more evidence, bringing current facts, I guess. I'm sorry, I didn't hear. That's all right. I said you were adding additional evidence. Yes, because I mean, obviously, the fact that she became pregnant. What happened to that second motion to reopen? I'm sorry, again, I didn't. What happened to the second motion? Oh, they denied, they denied the second motion to reopen, saying that it was. OK, that brings you here. Yes, that brings us here. What do you want us to do? I want you, we're respectfully requesting that you reverse the decisions by the BIA. Which decision? The final one or the earlier one? Well, I guess I would I would qualify this by saying I understand that there's an issue about the court reviewing the denial of a motion to reopen on sua sponte grounds. So but aside from that, I think that you should reverse the initial decision dismissing his appeal. You should reverse the denial of the timely motion to reopen. And given that that decision is obviously, in our view, is incorrect, you should also reverse and vacate the denial of the motion to reconsider. But it would suffice for you to reverse the decision dismissing his appeal and the denial. And to do what? Send it back for more hearings? Well, I want us to decide. What do you want us to do? I think this court could conclude that under any standard. What do you want us to do? I would I would suggest that you send it back to the Board of Immigration Appeals so that it can. For whatever proceedings they think appropriate. Correct. So that they can, with respect to the motion, that they can properly grapple with the evidence and apply the correct standard in the first instance. And also because the initial decision dismissing his appeal is based on is also clearly incorrect. They upheld an adverse credibility finding that is ultimately based on pure speculation. Well, you said they applied the wrong standard. What's the answer? That's an error of law. Yes, that's an error of law. Correct. And describe that error of law that you claim to rely on. Well, I think as they didn't apply the correct standard in terms of looking at what constitutes clear and convincing evidence indicating a strong likelihood that the marriage is bona fide, as we point out, they also. What specific is the error of law? He skips and they didn't apply the right standard. What's the standard and what's the incorrect when they apply? As we argue, as we argue, they should have looked to whether the evidence sufficed to indicate that it was highly probable that the petitioner had entered into a bona fide marriage. Instead, they. Why don't you quote the language? The fact is that the standard that the agency has applied for reopening this type of a petition is a strong likelihood of the bona fides of the marriage. The agency, the BIA, in this case, in fact, said clear and convincing evidence that the marriage was, in fact, bona fide. Correct. That's the answer you probably should have given to Judge King. Thank you, Your Honor. I think I appreciate, I appreciate that. I agree with that. They didn't. I thought you might. Thank you, Your Honor. I wasn't trying to trick you. I'm just trying to get it straight in my mind. OK. On the asylum issue, it appears that the IJ gave, well, this court will, of course, give deference, but he gave cogent reasons as to the marriage license. I mean, there's the medical note. This is a handwritten note. It says, I mean, he goes on and explains, I guess, the IJ goes on and explains that it details no treatment. It details no injury. He says it's a part of this blue party, but there's no letterhead. There's no card. Why is that not sufficient? The country report says that, you know, there were no arrests as a result of the protest. Why is that not enough in terms of reasons that is stated by the IJ? Well, I think this this court needs to look to what the board said in upholding the, so they didn't, what the board really did is focused on the implausibility findings when it upheld the IJ's adverse credibility determination. Now, we think the IJ erred in other respects as well, but I really what the board focused on was the sort of supposed implausibilities of his account. That's trying to give substance to a factual finding that the fact finder found, which was incredible, incredulous testimony. In other words, when the fact finder finds things incredible and explains why, the board can add to that to basically say it's implausible in order to verify or justify it. But it seems to me it's very hard to reverse a fact finder that says somebody's testifying incredibly. It's it is very hard, but not impossible and not impossible. But I don't understand how you want us to stand in the shoes of the board and say the board didn't act appropriately and recognizing it when the IJ explained why he was incredible. And the board supported that and said, supported that incredibility objectively saying it's implausible. That's just an additional support for the incredibility of it. Well, I think that you, the court should carefully examine the reasons that the board gave for upholding the implausibility findings, which are all ultimately based on speculation. But it's ultimately a credibility question. Yes, but, you know, to say something's implausible, you know, not implausible, incredible. There's a difference. The implausible supports fortifies an incredible credibility finding. But we're reviewing a credibility finding here just as the board did. Yes, Your Honor, I appreciate that. But when the board explained why they were upholding the negative credibility determination, what it focused on was the aspects of the respondent's, I'm sorry, the petitioner's account that were supposedly implausible. So I think it is appropriate for this court to review that portion of the board's decision. We're only supposed to reverse if we are compelled to find otherwise. Right. Well, I think I think you would be compelled. Statutory standard compelled to be compelled to find otherwise. I don't dispute that, Your Honor. I agree with that. However, and then on top of that, we have the credibility standard of substantial deference. Yes, I'm not disputing any of that, but I do I do take issue with the the reasons that the board gave for upholding the adverse credibility finding based on it, based on his account supposedly being implausible. First of all, the board is saying that it's implausible that he was arrested as a 16-year-old high school student in 11th grade in 2005, and then some four years later in 2010, is able to get a job with a government agency in Ethiopia. I mean, that that's completely speculative. Ultimately, they also say because he makes this allegation that he's a part of the Blue Party and working for the government at the same time. So he joined the Blue Party in February of 2013 after he joined the government agency and started working there in 2010. So his ability to begin work at that agency has nothing to do with his being a member of the Blue Party. That's something that happened later on. That doesn't support, respectfully, that doesn't support an adverse credibility finding. Now, it doesn't seem that the agency was aware initially that he was part of the Blue Party, and perhaps there's some indication in the record that they learned about that after his arrest. But it's not implausible in the least that he would be able to first obtain a job in 2010 with that government agency. And furthermore, the IJ just made a clear misstatement of fact when he stated in his decision that Hussein made multiple trips to China as a government employee before ultimately leaving the country for good. He only made one trip to China. That's just a clear misstatement of fact. And that's the sort of thing that this court reversed because it's just not an accurate description. And it's also not in the least implausible that he was able to ultimately depart from Ethiopia via a bribe. That many asylum seekers leave their country through a bribe. That's not remotely implausible. Finally, the country report that the IJ cited in claiming that it's implausible that he was arrested after a government, after a protest that the government allowed to take place also documents that there was persecution of Blue Party members. So, including arrests. So the notion that it's inherently implausible that he was arrested just because the government allowed one Blue Party protest to take place is not supported by the record. It's not inherently implausible for him to be arrested in a country where the government was systematically persecuting members of the Blue Party. I thought that he, that the Blue Party, that the government report, the country report said that no one was really arrested after the protest. They allowed the protest and that maybe there's no evidence of any arrests after. Your Honor, so I see my time as a, can I answer this question before?  I don't think, I'll review the country report before my rebuttal. But I don't think that's an accurate description of the country report. I think it does say that the government allowed the protest to take place. But I don't think that there's any indication that there were no arrests following the protest. But I'll review the country report before my rebuttal. All right, thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court. Rachel Berman-Voporis, the United States Attorney General. The Court should deny the petition's full review. Although the petitioner managed to become engaged and married within the 90-day period required to file a timely motion to reopen, the Board reasonably considered meaningful the lack of evidence of a joint life between the petitioner and his spouse, calling their marriage a short life. A shared life, Your Honor. Shared life. That they were sharing their lives together.  You would agree that the Board did not, they mentioned that there's a lease, but they don't consider the lease agreement. They don't consider this GEICO car insurance. They don't consider plane tickets of her moving to Alexandria from Ohio. They just say there's no shared life. I disagree with that characterization, Your Honor. That's what they said. You can't disagree. Well. I apologize. Perhaps I misunderstood your question, Your Honor. What Judge Benjamin says is correct, isn't it? I apologize, Your Honor. I think I misunderstood your question. Would you please repeat it? So, my question is, do you agree that the Board did not consider the lease agreement, the GEICO policy, the plane tickets of her moving from Ohio and relocating to Alexandria um, in their decision? They just say there's no shared life. No, Your Honor. Okay. The Board specifically mentioned the Joyce lease agreement and its decision denying the petitioner's motion to reopen. You know, I'm troubled even more fundamentally. The Board cited the wrong standard. The Board said the clear and convincing evidence with respect to the bona fides of the marriage. Whereas the case they cited, uh, said on the reopening, you only have to satisfy a strong likelihood of the bona fides of the marriage and leave the actual finding of the bona fides of the marriage up to the hearing. You don't have to prove the ultimate fact at the reopening stage. And that is, that looks to me like a clear misstatement of the standard. It is true, Your Honor, that the petitioner did not need to conclusively show... Not conclusively. Not show by clear. Strong likelihood. Clear and convincing evidence of a strong likelihood with respect to the bona fides of the marriage. Yes, Your Honor. And that standard seems to be more relaxed than actually focusing on the bona fides of the marriage. You don't question the bona fides of the marriage, do you? Yes, Your Honor. You do? Yes, Your Honor. There's a marriage license in the record. Yes, Your Honor. It's certified. And there's also an Islamic confirmation. I mean, there are two of them. They're in there and they're having a baby. Your Honor, there's no dispute that a marriage ceremony took place and that the petitioner and his spouse are legally married. So you agree that they're legally married? Yes, Your Honor. The dispute is whether... But is the government's position that it's a sham legal marriage? The government's position is that the petitioner has not shown... That his burden to show that it's not a sham marriage. What's a sham marriage if you say they were legally married, it was witnessed by family, people came from Africa to attend from the Midwest, tickets everywhere, they did it in a mosque in Ohio before officials, witnessed by everybody, and then they had a big celebration afterwards. Is that a sham? Your Honor, a sham marriage is one that is entered into for the primary purpose of circumventing United States immigration laws. So... Well, what's a bona fide marriage? At this point, he's about to be deported and he enters into a bona fide marriage. What would a bona fide marriage be? If he's a bona fide marriage, he could be adjusted, couldn't he? Yes, Your Honor. All right, so he enters into this marriage and you say it's legal, but not bona fide. It's legal, but he did not... Because he entered into it in order to not be deported. But it seems to me if it's bona fide, it's real. He loves her. They got together. They live together. They have a baby together. They have insurance together, the lease together. They share their... They have an endowment specified. They have family members all over celebrating it. What more do you want for a bona fide, or at least a strong likelihood of a bona fide marriage? If I may, Your Honor, some of the evidence you mentioned came with the petitioner's second motion to reopen. For example, the evidence about the petitioner's spouse's pregnancy. I didn't use pregnancy. I said everybody attended the marriage. The people traveled far and wide. They went to a holy place where they conducted. It wasn't conducted downtown in the clerk's office. They witnessed it. They had a celebration afterwards. And many people attending and witnessing it. They had a contract of marriage. They had the traditional practices in the culture of families agreeing to the marriage. I don't know what you want more. I mean, just because the marriage was entered into to prevent their leaving, if it's bona fide, it's okay. Well, but the petitioner has to present evidence of that, Your Honor. Sufficient evidence of that. What more? What more could have been shown to satisfy the government? A joint account. A joint bank account, Your Honor. Showing the commingling of finances. I thought there was a joint bank account. Not with the person. There was a lease and both their names. But what Judge Niemeyer recited. My wife has an account and I have an account. And there's separate accounts. Yes, Your Honor. So a joint. And so I'm not a bona fide married. Well, maybe I'm not. It's been 60 some years. What about all those grandchildren? If I may, to answer these questions, I think it's important to put in context where this bona fide requirement comes from. From regulation, there's a healthy skepticism of marriages entered into. We've had a lot of sham marriages. And one of the typical ones is where they go down, get married in the clerk's office, and then they each go back to their own apartments. We've had that. They didn't even live together. It's a sham marriage. They did it for to avoid deportation. But the question here is what if they wanted to avoid deportation with a legitimate bona fide marriage? And I must say, we don't have to rule. The BIA, I think, erred in its standard. We don't have to conclude it's bona fide. We only have to conclude was there evidence of a strong likelihood of it being bona fide. Because the ultimate question of whether it's bona fide would be determined on the re-hearing. Right? Yes, Your Honor. But if I may. And I would suggest to you, you represent the Attorney General of the United States. Yes, Your Honor. And you're standing here in the Fourth Circuit Court of Appeals. You've got a duty of candor to this court. And I don't know how you can say with a straight face that the Attorney General considers this not to be a bona fide marriage. Forgive me, Your Honor. The dispute is whether the petitioner's marriage is bona fide. But the Attorney General is not saying that the petitioner does not have a bona fide marriage. We are saying he did not meet his burden to show, by clear convincing evidence, a substantial likelihood that it's bona fide. You have to start with the proposition that the marriage is bona fide. But for the motion to reopen, as Judge Nehemiah said, is a strong likelihood. The motion, so you're saying clear and convincing. That's what would be decided at the rehearing. The strong likelihood is as to the... So here, we are looking at the motion to reopen. And the board just said, there's no evidence. And then we have before us all of these things that he's presented. And you mentioned the regulation. Regulation specifically says, lease showing joint tendency of a common residence. Documentation showing commingling of financial records. Affidavits of third parties having knowledge of the bona fide marital relationship. I mean, I think he submitted at least four or five affidavits regarding the relationship. And then there's these pictures in Ethiopia. And the families go to Ethiopia ahead of time. Then you have the flight where she moves from Ohio to Virginia. And so, the issue seems to be that the board just says that there's no evidence of any shared life. And not considering all of these different documents that were submitted. The board did not engage in a lengthy analysis of each piece of evidence, Your Honor. I don't think they did any analysis. They just said, no, there's no evidence. There's a lease, but there's no evidence of a shared life. And I understand you're saying that this is potentially a sham marriage. But that would, had they reopened it, that would be determined at the hearing. Well, but by regulation, Your Honor, the petitioner is ineligible for adjustment of status based on a marriage that he entered into during removal proceedings. Ineligible. Full stop. Unless he meets an exemption. And the exemption is the bona fide marriage exemption. Well, that's where we're at. There's no question that if it's bona fide marriage, it's okay, right? If it's bona fide. If he presents clear and convincing evidence of a successful marriage. If he demonstrates. Now, at this stage, when we reopen, I'll pass that. We only have to show a strong likelihood of a bona fide marriage. But let's assume at this point, we're setting that aside. And we'll just look at what the evidence is. A sham marriage would be one where there was never an intent to be married. The only reason of going through the process is to avoid deportation. Here, there is a lot of evidence of intent to be married, to be joined into a family. Now, you say the evidence they should have shown is a joint account. Is there anything else they should have shown? That's an example of the type of evidence, Your Honor. Well, give me another example. Joint ownership of property. Well, they did. They showed a lease where they both were on the lease. That's a rental agreement, Your Honor. That's an interest in property. You know, that's routine property law. That is an interest in property, Your Honor. So they can't rent and be married? Of course they can, Your Honor. And doesn't it, if they put both names on the lease, and they put both names on the insurance and the car? Which is temporary, Your Honor. And rental agreements are temporary. What's the evidence of that? What's the evidence of that? The car insurance had an expiration date. I believe it started in January and then expired a few months later.  Yes, Your Honor. But you can't rely on, you can't rely on and say that it's a sham simply because an insurance policy has a termination date. Well, that is not why I'm trying to say, Your Honor. I mean, because if we're going to look forward, then we have to also look forward to the fact that they consummated the marriage and had a baby. Well, Your Honor, that is evidence that was submitted with the motion that was... I know, we're not considering that on the motion to reopen. But my whole point is you're looking at things like they sign a lease, you say, oh, the lease has a term and therefore it could be a sham. Or they sign insurance, it has a term and therefore it could be a sham. Well, the whole thing could be a sham. They could be a huge conspiracy. People came from Ethiopia by airplane. People came from the Midwest. They came from all over the country. They came to this ceremony, attended it, signed a contract, had a party afterwards. Big conspiracy. There must have been about 50 people had to agree, right? That it was a sham? I thought I read there was up in the hundreds. Yeah, there may be a lot. At Columbus, Ohio. Your Honor, it's... And those licenses, you question the validity of the marriage licenses? I do not question that the petitioner is legally married. And he may also be married according to the customs of his religion. That may be true, Your Honor. But it's not just whether a marriage exists. It's whether he entered into the marriage with the primary purpose of circumventing the United States immigration laws or not. And the board looked at his evidence and said... Well, let me ask you this question hypothetically. Yes, Your Honor. If every indication that you can think of showed it was a bona fide, but they entered into the bona fide marriage in order... At this time, in order to avoid deportation. But they agreed, they loved each other. They're going to stay together for life. They merged all their property. They consummated the marriage. Everything that you can think of. But the timing was the same. Would it be okay? If they presented sufficient evidence, Your Honor, then yes. Okay. Well, theoretically, it'd be okay. So now we're down to an evidentiary question. Whether they presented, not whether they entered into it to avoid deportation. That may be a legitimate conclusion. The question is whether their marriage is bona fide or a sham. And if it's bona fide, all they have to show to reopen is a likelihood, strong likelihood that it can be shown. And then at the hearing, you'll hear the evidence of what they have. And you'll see these pictures. And at the re-hearing, you'll hear all of where their bank accounts, where their money is and endowments and everything else. You can hear anything they want to hear. But at this point, the question is, is there evidence of a strong likelihood? And the BIA didn't even apply that standard. I'd like to address that, Your Honor. The standard, as you mentioned at the beginning of my argument, is clear and convincing evidence of a substantial likelihood. Right. That the marriage is bona fide. That's the standard. But they cited in their brief a strong likelihood, not a strong likelihood, clear and convincing evidence of a bona fide marriage. The board did... That's what they said. The board did say that, Your Honor. But it also cited to the case that gives us this standard. But they construed it wrong. So they do better or should have done better because they had it before them, but they applied the wrong standard. Or since the petitioner had to meet the clear and convincing evidence to show a substantial likelihood, they nearly found that the petitioner did not meet that first part, did not show clear and convincing evidence of a substantial likelihood that his marriage was bona fide. They didn't make that finding. They made a finding that they didn't show a substantial likelihood with respect to the marriage itself, bona fides of the marriage. Yes, Your Honor. But given that the board cited to the case that stands for this proposition... So they say one standard and cite a case with another standard and you think they've done the right thing? I think the board did not recite the entire standard as provided in Mater Valerde Pacheco. Maybe they applied the standard they said they were applying. Would that have been error if they applied the standard they said they were applying? If the board applied the incorrect legal standard, then that would be error, Your Honor. If the board applied the standard it said it was applying without the case, is that a problem? If the board had not cited to Mater Valerde Pacheco, then that would have been a problem. But here with that citation, taking together with the clear and convincing standard being part of the definition... We're supposed to read it as if they applied to one of the case they cited, not what they said they did. Well, the case citation... We're supposed to correct it for them in the context of all this evidence of the bona fide marriage? Well, of course, just looking just at the evidence submitted with the first motion to reopen. I mean, rocket science, I mean, it's beyond a reasonable doubt. There's a marriage. And it's bona fide, it's stamped by the clerk of the court and the ministers and the officials of the Islamic mosque out there in Columbus. And the families are coming together and the families were specifically agreed to the marriage ahead of time. Parents, this is not the petitioners here. Would they have done so if it was a sham? Well, if the petitioner obtains a green card, he would then be able to petition... No, no, I'm not talking about a green card. If the parents agreed to the marriage and then it was held, does that indicate that there was a sham? That on its own, Your Honor, no. I would not say that that is evidence either way. I need to look at all of the evidence taken together because from regulation, he's ineligible for adjustment of status. You just said he's eligible if he shows a bona fide... If he meets an exemption, Your Honor. Okay, that's what we're determining. And he sought to reopen on the basis of a bona fide marriage, his claim. And you guys looked at the evidence and said, no, that's not enough. Yes, Your Honor.  And doesn't the BIA have to give a reason? Reason analysis as to this decision. So just saying there's no evidence of a shared life would not be... They give no reason as to why there's no shared life. They just said there's no evidence of a shared life. Wouldn't that be abuse of discretion? No, Your Honor. Because the board discussed the evidence, the main evidence submitted with the motion and said this was not enough to show, by clear and convincing evidence, a substantial likelihood, of course, the board did not use that language, that his marriage was bona fide. And I just think the context of this is important. By regulation... Well, the context... You've got a very strong matter on the context. I mean, because the timing, of course, is critical and they obviously didn't want it to avoid deportation, but the question... I don't think you agree that that doesn't resolve the question, the timing. The question is whether, in fact, in the end, the marriage was bona fide. If it's a bona fide marriage, then you can consider an adjustment. And so the question at this stage, they moved to reopen. The question at this stage is have they satisfied the gate, opening gate, to get in, to have the agency consider whether the marriage was bona fide. I mean, the issues before us now is not whether the marriage was bona fide. The issue is whether the strong likelihood, that they've shown a strong likelihood that it was in order to entitle the agency to rehear it. And it seems to me that's a lesser standard than the actual conclusion that it's a bona fide marriage. Now, your argument's going to be, I suppose, we don't have evidence of the bank account. We have the timing. We have a very short period of time during which they got to know each other. But of course, that presumes, even making that observation, that presumes that we have long engagement periods in Western cultures. We get down on our knees and ask the parent, and then you wait a year and all this other stuff. That isn't necessarily... And they explained that that was not consistent with the culture. And that wasn't... And you didn't say that was a sham. Now, you could say that's a sham too, maybe, I suppose, that they invoked the culture for their marriage. But I must say, under that culture as described in the documents, that looks like beyond a strong likelihood, that actually looks like they had a marriage. A bona fide marriage. I see my time has expired, but if I may answer your question. You can answer whatever you wish, sure. Thank you, sir. I think it's important to note the evidence we have, that the petitioner is short. The petitioner's length of courtship, engagement in marriage is inconsistent with this culture, really only comes from his affidavit. And as the board noted in denying his second motion to reopen, he never addressed, let alone overcame, the adverse credibility finding. That's a good point. I mean, and there may be some of that in this whole case. In other words, the incredibility finding with respect to his original petition for asylum is... bleeds over and they don't believe him. But I must say, he had a long affidavit, but there were about five or six others in there and there were pictures. And there was no reason to disbelieve all those. And there was a license, there was a contract, marriage contract, and all these other things signed. It took place apparently undisputedly in a mosque, a religious forum, not a civil forum. A lot of indicators. And the question is, is that a strong likelihood? It seems to me at the least, it would have been good for the BIA to recognize they didn't have to go to the ultimate question, but had to only determine whether the gate should be opened. But whether there is clear and convincing evidence of a substantial likelihood. I understand that, Your Honor. And I just want to briefly mention that the petitioner has... The petitioner has multiple avenues to adjust... I want to ask you something. Oh, I apologize, Your Honor. If we send this back, what's the BIA do with it? How does it resolve it? If we send it to the IJA for more hearings or... If you know, or if you don't know, what would you recommend they do? It would depend on the posture, Your Honor.  It would depend on the posture. If we send it back and vacate what you're ruling, and tell you to do whatever needs to be done, what would you do? If this court... I'm talking about you, the BIA, the Attorney General, how you all handle this. I want to know how you will handle it. And you're the lawyer. How would you recommend they handle it? The court sends this case back to the board stating, we don't believe you applied the correct legal standard. You cited the case... If we just send it back to you and tell you to keep going, and we vacate the ruling... Listen to me. We vacate the ruling and send it back for further proceedings, appropriate proceedings, what are you going to recommend they do? I guess I don't understand, Your Honor, if we're sending it back to the board on a legal error, or if this court is making the legal determination... We conclude that there's a strong likelihood evidence shown. Then proceedings would be... And then, so we tell them to reopen. Then the question is, where does it go? The immigration judge, Your Honor. The BIA sends it back down? Yes, Your Honor, because the board has very limited fact findings. And then the IJ would do the same thing that they did on the asylum claim. Weigh the evidence, the legitimacy of it, credibility of the affidavits. That would be the place where you would... Your argument regarding credibility, right? That is where the Department of Homeland Security would investigate the petitioner's claims through an immigration court hearing. The petitioner would present evidence supporting his marriage being bona fide. And the immigration judge would come to that conclusion, as well as addressing the other eligibility requirements for adjustment of status, including whether he merited as a matter of discretion. And in considering the evidence, Your Honor, that is where the immigration judge may take into consideration. And at that point, you can make the point that if the timing's questionable, you can talk about the credibility finding and the other proceeding. You can talk about whether that culture demands that, whether they combine bank accounts and that type of thing. Whatever your questions you had, that would be the place to do that, right? Yes, for the immigration judge, though, of course, if the court denied the petition for review, the petitioner could also seek to apply for adjustment of status through United States Citizenship and Immigration Services. And then they would do that investigation where they would gather the evidence, give the petitioner the opportunity to provide additional evidence, and then adjudicate his application for adjustment. Where did this come from to the board? Did it come from the IJ on this issue, the marriage issue? No, Your Honor. It came from the adjustment board? No, Your Honor. It was before the board in the first instance in a motion to reopen. Because since the petitioner... That's the reason, they're up here on the decision of the board. Yes, Your Honor. So only the board has looked at the petitioner's motion to reopen based on his marriage and the evidence he said... So the board has an option of where to send it. If we were to reverse the board, they can send it to one of two places, you say? The board would send it back to the immigration court, Your Honor, if they felt that more fact-finding is needed, which I presume it would do. I merely mentioned the Department of Homeland Security because that's just an alternative to adjusting status after filing a different form or two. But if this court sends the case back to the board, the board would very, very likely determine that more fact-finding is necessary and then send it down to the immigration judge for further proceedings, which would involve consideration of all the evidence submitted so far, as well as any new evidence submitted. That's helpful. Thank you. Thank you. All right. Oh, yeah. Yeah. Okay. Thank you. We've let you go through. That's helpful. Thank you. Thank you. Mr. Diskin. Yes, I just wanted to make a few more points in rebuttal. With respect to the demonstration, I did check the country report and it's silent as to whether the government arrested anyone following that demonstration. This is on Joint Appendix 624 and 625, but the same country report directly states, and I quote, the government arrested persons in relationship to opposition demonstrations. So you have this evidence in the record that they've been arresting people following demonstrations. And I think it's just, you know, remotely impossible that they arrested the petitioner after this specific demonstration, even though the government did concededly allow the demonstration to take place. There's a variety of reasons why they might allow one or two demonstrations to take place, but it doesn't mean that they wouldn't necessarily observe who attended that demonstration and arrest some of the participants, especially when you have this evidence in the record that they not only arrested persons in connection to opposition demonstrations, but were specifically targeting members. How is that relevant to what we have, the question we have before us here? Well, that's relevant to the initial decision dismissing his appeal because one of the implausibility grounds is that it's supposedly incredible that Hussein attended a demonstration that was allowed by the government and was arrested. That's on his asylum case. That's in his asylum case, correct. But don't, but you understand that the immigration judge has the, they have to determine credibility and he does. And then they have to give a reason. And that's what the immigration judge does. He goes and the BIA considered the immigration and goes back and recites what the immigration judge did in considering. And that was one of the things is that he's working for the government, that he is working for the government, that he's not, that he's not arrested based on this country report. There's no arrest, that he's basically kind of a bystander. I mean, they adopt the findings of the immigration judge. Your Honor, I'm not sure that the board actually expressly adopted all the findings. They mainly focused on the implausibility findings of the immigration judge. I don't know. You know, they said, they said, they referring to the IJ and they said they found it not credible because the testimony was, quote, vague, lacked detail and was implausible. He further found that corroboration provided was insufficient. And then they conclude on the next page that we discern no clear error in the immigration judge's adverse credibility finding. I mean, the court did, the BIA did explain other stuff, but it seems to me. So, Your Honor, the way I read that is on Joint Appendix 428. It's kind of. He's reciting the IJ. It's reciting the procedural history. And then this paragraph that says we discern no clear error in the immigration judge's adverse credibility finding. That's the board's analysis. That's what I said. Yeah, yes. But that's what we're reviewing, right? Yes, and that's the part. But you tried to narrow it all to just plausibility. And I'm suggesting that it's more than plausibility. It's plausibility, vagueness, insufficiency of corroboration and lack of detail. Your Honor, respectfully, I disagree because as I read the decision, they don't specifically uphold the vagueness finding. They focus on the plausibility. And then they go on to say that we agree that the corroborating evidence does not rehabilitate his incredible testimony. But even regardless, I think that the plausibility findings that the board addressed are based on speculation and in themselves warrant reversal because they're just completely based on speculation, all of them. As I said, we talked about the protest. It's also not remotely implausible that he was able to get a job with the government when he was arrested as a teenager several years prior to that. It's not remotely implausible that he went to China as a government official. And the immigration judge mistakenly stated that he went multiple times as a government official when he went one time. Aside from that, it's not implausible that he was able to depart from the country for good after paying through means of a bribe. None of them are implausible. So I think when you look at that, you should. And that's what the board focused on. It's just not supported by the record. It's quintessential speculation of the sort that this court should not find sufficient. So I see that my time is about to expire. So I respectfully ask that this court vacate the decision and reverse the decision by the board below. Thank you. All right. We'll come down and greet counsel and take a short recess. Honorable court, we'll take a brief recess.
judges: Paul V. Niemeyer, Robert B. King, DeAndrea Gist Benjamin